JACOB MOATS *vs.* DANIEL WITMER.—*June,* 1831.

F sold a tract of land to W reserving the grain then in the ground.   This was to be thrashed in the barn, and the straw left for W's use.   While the grain was growing, F sold it to M, who had notice of the first agreement. M cut the grain and stacked it upon the farm, but afterwards entered upon the premises then in the possession of W, and hauled away the grain in the straw before 't was thrashed, thrashed it; and did not return the straw. In an action of trespass *q. c. f.* brought by W against M—HELD, that if the jury believed M's entry was for the purpose of removing the grain and thrashing it off the premises, that it was a trespass *q. c. f.* and the plaintiff might recover damages for that, and the straw which was removed and not returned.

Where a party is a trespasser or not, according to the intention with which he enters upon land, then, whether he is a trespasser or not, is a question for the jury exclusively.

Acts which amount to trespass *vi et armis,* and which are a component part of one outrage, may be united with a claim for the trespass *q. c. f.* and damages for both recovered in the same action.

APPEAL from *Washington* County Court.

This was an action of *Trespass quare clausum fregit,* brought by the appellee, against the appellant, on the 5th of March, 1828.

The defendant pleaded not guilty, and issue was joined.

At the trial the plaintiff read in evidence to the jury, the following agreement, to wit: " Articles of agreement

made this 11th of November, 1826, between *Daniel Wilmer* of the one part, and *Henry Funk* of the other part, witnesseth ;—that the said *Henry Funk* excepts the grain in the ground, on the land conveyed by said *Henry Funk*, to *Daniel Witmer*, by a deed bearing date the 23d of October, 1826, last past. The straw to be left on the land, and thrashed in the barn of the said land, for *Daniel Witmer's* farm use," &c. And likewise read to the jury, the following conditions of sale, signed *Henry Funk*, and dated May 25th, 1827. " The condition of this present public sale is such, that the highest bidder or bidders shall be the buyer or buyers. The grain will be sold by the acre, and thrashed in the barn on the premises, and the straw left for the use of *Daniel Witmer*, and stacked in and round the barn of said *Witmer*. A credit of six months will be given the purchaser, by giving his note with approved security." Of which conditions of sale it was proved the defendant had notice. It was admitted that the plaintiff was in possession of the land, in the said agreement mentioned as purchased of *Funk*, and that the defendant in May, 1827, purchased the crop of grain in the ground from the said *Funk*, at public sale, when the aforesaid conditions of sale were read in the presence of the defendant, and that he cut the said grain and stacked it in the field where it grew. The plaintiff then proved, that the defendant afterwards entered on the premises, and hauled away to his own farm the grain in the straw, before it was thrashed, and there thrashed it, and did not return the straw to the premises. The defendant then prayed the court to direct the jury, that as he had a right of *ingress* and *egress*, to cut the grain, and get it out, and remove it, that the plaintiff is not entitled to recover in this action, on account of his removing the grain with the straw before it was thrashed; and *secondly*, if the court should be of opinion that the plaintiff is entitled to recover for the trespass, he is not entitled to recover for the straw removed, before it was thrashed. Which direction the court refused to give, but instructed the jury, that if the defendant enter-

ed on the premises for the purpose of removing the grain
in the straw, and thrashing it off the premises, and did so
remove, and thrash it, and did not return the straw to the
premises, whereby it was lost to the plaintiff, that then, the
plaintiff was entitled to recover for the trespass charged in
the declaration.

The defendant excepted, and the verdict and judgment
being against him, he appealed to this court.

The cause was argued before MARTIN, STEPHEN, and
DORSEY, J.

*Anderson,* for the appellant, contended

1.   That the defendant having a right to enter on the
premises to get out his grain, was not guilty of the trespass
complained of.   On this point he cited, *Shafer vs. Smith,*
7 *Harr. and Johns.* 67.   *Bul. N. P.* 89.   3 *Stark. Ev.*
1451.   *The King vs. Commissioners of Dean Inclosure,*
2 *Maul. and Selw.* 79.

2.   Supposing a trespass to have been committed, still
the plaintiff was not entitled to recover damages in this ac-
tion, for the straw was carried away before it was thrashed.
2 *Wheat. Selw.* 1035, 1036.   3 *Stark. Ev.* 1444.

*Price* for the appellee, referred to 3 *Stark. Ev.* 1444.
*Dexter vs. Hager and Arnold,* 10 *Johns. Rep.* 256.

DORSEY, J., delivered the opinion of the court.

The direction given to the jury by the court below, was
" that if the defendant entered on the premises, for the pur-
pose of removing the grain in the straw and thrashing it off
the premises, and did so remove and thrash it, and did not
return the straw to the premises, whereby it was lost to the
plaintiff, that then the plaintiff was entitled to recover for
the trespass charged in the declaration."   In this instruc-
tion, we can discover nothing of which the appellant ought
to complain.   It concedes to him more than he had any
right to demand; and denies to him nothing on which he
had a right to insist.   'Tis true that, under the contract be-

tween *Henry Funk* and *Daniel Witmer*, he was authorised to enter on the land for the purpose of cutting and securing the grain, thrashing it in the barn, and removing it away, but for no other purpose. The moment he entered, in the language of the court, "for the purpose of removing the grain in the straw, and thrashing it off the premises," his right of *ingress* and *egress* no longer protected him, and he stood in no better predicament than any other trespasser. Upon this ground the court were also right in refusing the first part of the instruction prayed for by the appellant; to wit : " that as the defendant had a right of *ingress* and *egress* to cut the grain, and get it out, and remove it, that the plaintiff is not entitled to recover in this action, on account of his removing the grain with the straw before it was thrashed." In granting this, they would have trenched upon the province of the jury in determining, *quo animo*, the defendant entered. If his entry was made for the purpose of getting out and removing the grain conformably to the agreement between *Funk* and *Witmer*, although after he entered he may have changed his mind and committed the outrage complained of, an action of *trespass quare clausum fregit* could not be maintained against him. It is the *intention* of the defendant which stamps the character of his entry, and this the jury, only, are competent to find. In granting this branch of the instruction too, we think that the County Court would have erred on another ground. Admitting the acts of the defendant as far as the land was concerned to be lawful, yet according to our construction of the articles of agreement between *Funk* and *Witmer*, the latter had such a property in the straw, as rendered him competent to maintain an action of trespass *vi et armis*, for such a taking and carrying away of the same, as is presented by the facts set forth in the bill of exceptions. The true intent and meaning of the agreement was, that the grain should be the property of *Funk*, the straw of *Witmer:* and their respective possessions were co-extensive with their rights. *Witmer's* right to the straw was absolute,

his possession unqualified, but as it might be lawfully invaded by *Funk,* or those claiming under him, with a view to its being thrashed in the barn on the premises.    For this purpose, and no other, had they a right to touch or remove it.    Suppose *Witmer,* owning both grain and straw, had sold the grain to one person, and the straw to another, (subject to the same restrictions as to thrashing out, as are prescribed in this case,) and a stranger were to seize and carry away both, can it be doubted, that against such wrong doer, each owner might maintain a separate action of trespass *vi et armis?*    In the case at bar the principle is the same.

The second branch of the defendant's prayer, "that if the court should be of opinion, that the plaintiff is entitled to recover for the trespass, he is not entitled to recover for the straw removed before it was thrashed," is put to rest, by the interpretation we have given to the contract between *Funk* and *Witmer.*    As whatever may be the law, as to a plaintiff's right to recover substantive damages for acts of the defendant not amounting to a trespass *vi et armis,* but which may be the foundation of a separate action on the case, when charged in the declaration in trespass *quare clausum fregit,* as a component part of the outrage complained of, there cannot be a doubt, that if such acts do amount to a trespass *vi et armis,* they may be united with the action of trespass *quare clausum fregit,* and the same damages be recovered therefor, as if a separate action had been brought.    And the plaintiff is entitled to a full indemnity for both or either of the trespasses accordingly, as his case may be sustained by proof.    3, *Stark. Ev.* 1451, 2 and 3, and the cases there referred to.    5 *B. and A.* 220.

Seeing no error in the proceedings of the County Court, to which the appellant has any right to except, we affirm their judgment.

**JUDGMENT AFFIRMED.**