## JOSEPH L. HAINES *vs.* ELIZABETH J. HAINES, Etc.

*Trespass Quare Clausum Fregit—Recovery also for Trespass vi et armis—Exceeding Authority to Repair Aqueduct on Adjoining Land—Pleading—Replication—Evidence.*

If a party has a prescriptive right to enter upon adjoining land for the purpose of cleaning and repairing an aqueduct or race by which water is conveyed to his land, and in doing such work exceeds his authority by deepening and widening the race and throwing debris and water upon the adjoining land, he is liable therefor in an action of trespass *q. c. f.*, although the acts complained of amount also to a trespass *vi et armis.*

The plaintiff and defendant owned adjoining tracts of land. For more than thirty years prior to the action in this case, a stream of water flowed across plaintiff's land in an artificial race to the premises of the defendant by whom it was used for agricultural and manufacturing purposes. It was admitted that the defendant had the right to use the water and the right to go upon the land of the plaintiff to clean and repair the race. In this action of trespass *q. c. f.*, the declaration charged that the defendant entered upon plaintiff's land and deepened and en-

larged the race beyond its former size threw the material excavated upon the plaintiff's land, and caused large quantities of water to flow over said land. There was evidence in support of these allegations. *Held*, that the jury was properly instructed that the plaintiff was entitled to recover if they found that the defendant widened the race by cutting down its banks and did more damage to the plaintiff's land than necessary to secure to the defendant the flow of water which he had been accustomed to enjoy.

*Held*, further, that in such action evidence is admissible to show the uses to which the defendant put the water, and as to the manner in which the race was cleaned.

When the party who has the right to enter upon the premises of another to do certain acts, exceeds his authority and forcibly does unlawful acts, the owner of the premises may sue in trespass *q. c. f.* for the whole wrong, and recover therein also damages for such acts as amounted to trespass *vi et armis*.

In an action of trespass *q. c. f.* when the defendant pleads a prescriptive right or easement to enter upon the premises for a certain purpose, the plaintiff may reply that the acts complained of were in excess of the right set up by the plea.

*Decided November 2nd, 1906.*

Appeal from Circuit Court for Washington County (KEEDY, J)

The cause was argued before McSHERRY, C. J., BRISCOE, SCHMUCKER and BURKE, JJ.

*Guy W. Steele* (with whom was *J. A. Mason* on the brief), for the appellant.

*D. N. Henning* and *E. O. Weant*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee, who was plaintiff below, and the appellant's testator, who was defendant below, owned adjoining farms in Carroll County. For more than thirty years prior to the institution of this suit the entire volume of water from a stream known as "Wolf Pit Branch" had flowed across the farm of the plaintiff, for a distance of 1150 feet, in an artificial aqueduct or race to the farm of the defendant who used the water for domestic, agricultural and manufacturing purposes. The de-

fendant had during all of that time been accustomed to clean and repair the race when necessary, usually at intervals of two or three years, and to go upon the plaintiff's farm for that purpose.

In October, 1904, the defendant accompanied by several laborers with horses and cart and plow entered the plaintiff's farm and cleaned and repaired the race. The plaintiff thereafter by her husband and next friend instituted in the Circuit Court for Carroll County the present suit of trespass *quare clausum fregit* against the defendant for the entry thus made upon her land and alleged injuries there inflicted by him and his servants upon the soil and grass while working upon the race and for the alleged widening and deepening of the race so as to cause large quantities of water to flow over and flood her land. The case having been moved on affidavit to the Circuit Court for Washington County, and the pleadings conducted to an issue it was tried before a jury and a verdict rendered and judgment entered for the plaintiff for nominal damages. From that judgment this appeal was taken.

There was no controversy between the parties to the case as to the relative position of the two farms or the existence and location of the race through which the water flowed across the land of the plaintiff to that of the defendant. The situation was still further simplified by the admission of the plaintiff, during the trial of the case *"that the defendant had the right to convey the water of "Wolf Pit Branch" to his property by means of the race mentioned in the evidence and shown on the plat, as well as the right to go upon the land of the plaintiff to clean and repair it."* The question of fact in the case was whether the defendant and his servants in cleaning and repairing the race within the plaintiff's enclosure in October, 1904, had exceeded their rights and done greater injury to her land and grass than was reasonably necessary and unavoidable. There is evidence in the record tending to show that no other than usual and necessary cleansing and repairs had been made on that occasion. There is other evidence tending to show that the defendant had at that time caused the race to be ma-

terially deepened and widened and had otherwise unnecessarily injured the plaintiff's land and grass.

The record contains three bills of exceptions, two relating to rulings of the Court below on the admissibility of evidence and the third being to its action on the prayers. The propriety of the disposition made below of several demurrers is also brought up for review by the appeal.

We will first consider the questions of pleading presented by the record. The declaration in a single count charges the defendant with having, on the 8th of October, 1904, and divers other days, &c., forcibly broken and entered the plaintiff's close and destroyed her grass and soil and widened and deepened the race within the close and caused large quantities of water to flow over and flood the soil to her great damage and injury. It is thus apparent that the declaration charges, as component parts of the outrage complained of, the breaking of the close and the unlawful acts done within it after the entry had been effected. The defendant filed the general issue plea and two special pleas, by way of confession and avoidance, one setting up a prescriptive right in himself to use the race to convey the water from "Wolf Pit Branch" to his farm, and the other setting up the same right to use the race and also a like right to enter the plaintiff's close and clean and repair the race. The plaintiff joined issue on the general issue plea and demurred to the second and third pleas and the Court sustained the demurrer. The defendant then withdrew those two pleas and filed amended second and third pleas setting up more fully the same defenses as the special pleas originally filed, and further averring in the second plea that in October, 1904, he had cleaned and repaired the race *in the ordinary and usual manner* doing no avoidable or unnecessary damage to the plaintiff's land, and averring in the third plea that he had on that occasion cleaned and repaired the race *in the same manner that he had always done it for twenty years theretofore* and in an ordinary manner. The plaintiff replied to the amended third plea denying the existence of the alleged prescriptive rights therein set up. The defendant demurred to this repli-

cation and, his demurrer having been overruled, he joined issue on the replication.

At the trial of the case after the evidence was in the plaintiff with the leave of the Court withdrew her replication to the amended third plea and filed two amended replications of which the first was similar in terms to the former one, but the second averred by way of new assignment that the defendant when he entered upon the plaintiff's lands in October, 1904, dug down the soil and widened the race *beyond the condition of its existence for the twenty years prior thereto* and despoiled the land and crops of the plaintiff by throwing the debris and offal, accruing from the cutting down of the ditch, upon the lands of the plaintiff *beyond the limits he was entitled to do by virtue of any prescriptive right* as alleged in the amended third plea. The defendant demurred to this amended replication and his demurrer having been overruled he joined issue on the first amended replication and filed a rejoinder to the second one, traversing its allegations, on which issue was joined.

At the hearing in this Court the defendant as appellant did not insist on his objection to the action of the lower Court on any of the demurrers other than those to the second amended plea and the second amended replication. In our opinion no reversible error appears in the rulings upon either of these demurrers. The second amended plea set up a prescriptive right on the part of the defendant to use the race for conveying water to his farm, and averred that he entered the plaintiff's land in October, 1904, to clean the race and make necessary repairs to it and did no unnecessary or avoidable damage to the land and that the trespasses alleged in the declaration were those acts committed in cleaning and repairing the race. The defendant was not injured by the sustaining of the demurrer to that plea because the amended third plea, to which the demurrer was overruled, set up the same defenses with the additional one of a secondary prescriptive right in the defendant to clean and repair the race in the manner in which he did it on the occasion complained of in the declaration, and evidence was freely introduced at the trial of the case in support of all of those defenses.

Nor was any error committed in overruling the defendant's demurrer to the second replication by the way of new assignment to the third amended plea.   That is a well-recognized style of pleading for which forms have been provided in the Code. *Poe on Pleading*, sec. 684, &c., Code Art. 75, sec. 23, sub-secs. 78 to 80.  It is used with especial propriety in cases of trespass where the defendant, as in the present case, pleads a right of way or other easement by way of justification and the plaintiff desires to show that the acts complained of were in excess of the right set up by the plea.  "In all these cases, if the plaintiff simply traverses the defense set up, the issue will be as to the existence of the facts constituting the alleged defense and the evidence will be confined to such inquiry." *Poe's Pleading*, sec. 687, and cases there cited.  The other demurrers to which we have referred related rather to matters of form than substance but we find no reversible error in the disposition of them made by the Court below.

The appellee as plaintiff below offered four prayers of which the first and second were granted as modified by the Court and the fourth was granted as offered.   The third prayer was rejected.   The first prayer in effect charged that even if the jury found from the evidence that the defendant and those under whom he claimed title to his farm had used and enjoyed the race for the purpose of conveying the water to the farm exclusively, adversely and continuously for more than twenty years prior to the suit and had for that time been accustomed to enter the lands of the plaintiff and clean and repair the race and that in October, 1904, the race required to be cleaned and repaired in order to secure to the defendant the full flow of water which he had been accustomed to enjoy and that the defendant and his servants then entered the plaintiff's land to clean and repair the race and widened it by cutting down its banks and did more damage to the plaintiff's land than was reasonably necessary to secure to the defendant such flow of water the plaintiff was entitled to recover.   The second prayer was to the same effect stating the proposition conversely that the plaintiff was entitled to recover unless the jury found that the

cutting down of the banks of the race and widening it which had been done by the defendant was reasonably necessary in order to so clean and repair it as to secure to him and his farm the benefit of the water accustomed to flow therein for twenty years.

The prescriptive right of the defendant to use the race and the further right, whether incidental to the first one or separately prescriptive is immaterial, to enter the plaintiff's land to clean and repair the race whenever necessary were admitted by the plaintiff. The only seriously contested issue of fact in the case was whether the acts, committed by the defendant and his servants in October, 1904, and complained of in the declaration, were or were not in excess of his rights. The case was fairly put to the jury by the plaintiff's first and second prayers in the form in which they were granted.

The defendant, as appellant, urgently contended before us that these prayers were erroneously granted because he, having entered the plaintiff's land under a prescriptive right which implied a grant, could not be regarded as a trespasser *ab initio* if after he got in he had committed wrongful acts in excess of his right. He insisted that therefore no recovery could be had against him in this action of trespass *q. c. f.* but resort must be had by the plaintiff to an action *vi et armis* or on the case. Many authorities sustain the somewhat technical proposition that, as the gist of the trespass *q. c. f.* is the injury to the right of exclusion and not the injury to the land itself, a defendant who enters the close by virtue of a grant or license from the plaintiff and then forcibly abuses his right cannot be regarded as a trespasser *ab initio* for that would be to permit the plaintiff to punish, for a subsequent wrong, an entry which had been made by his own license. The general rule has been stated to be otherwise by our predecessors in *Walsh* v. *Taylor*, 39 Md. 599, where this Court speaking through the late Chief Justice Alvey said : "There is no doubt of the general principle that where a person has a special privilege or authority to enter upon the premises of another to seize goods, or do other acts, and he exceeds his authority by

doing what he was not authorized or justified in doing he becomes a trespasser *ab initio.* All his subsequent acts are trespasses and he is in the same position as if he was a perfect stranger acting without color of excuse or justification.''

It was however not essential to the plaintiff's right of recovery in the present case to show that the defendant was a trespasser *ab initio.* He was charged in the declaration with breaking the close, and forcibly committing various unlawful acts therein as component parts of the wrong complained of. Under such circumstances this Court has sustained the right of the owner of the close to sue in trespass *q. c. f.* for the whole wrong and to recover for all or any of the trespasses as his case may be sustained by the proof. In *Moats* v. *Witmer*, 3 G. & J. 118, the vendor of a farm by agreement with the vendee made after the sale of the farm was to have the grain in the ground with the right to return and thresh it, the straw to be left on the farm for the use of the vendee. The vendor or his assignee afterwards by virtue of the agreement entered on the farm which was then in possession of the vendee and cut the grain and hauled away both the grain and the straw and never returned the lattter. The vendee instituted an action of trespass *q. c. f.* against the vendor's assignee who had entered his farm and taken away the grain and straw and recovered a judgment. The lower Court at the trial of the case before it refused to instruct the jury on the prayer of the defendant: ''That as the defendant had a right of ingress and egress to cut the grain and get it out and remove it the plaintiff is not entitled to recover in this action on account of his removing the grain with the straw before it was threshed.'' This Court on appeal affirmed the action of the Judge below, holding that to have granted the instruction would have trenched upon the province of the jury in determining *quo animo* the defendant entered, as the intent stamped the character of the entry, and if he entered for the purpose of removing the grain in the straw and threshing it elsewhere, his right of entry no longer protected him and he stood in no better predicament than any other trespasser.

In the opinion in Moats case it is said: "Whatever may be the law as to a plaintiff's right to recover substantive damages for acts of the defendant; not amounting to a trespass *vi et armis* but which may be the foundation of a separate action on the case, when charged in a declaration in trespass *q. c. f.* as a component part of the outrage complained of, there cannot be a doubt that if such acts do amount to a trespass *vi et armis* they may be united with the action of trespass *q. c. f.* and the same damages recovered therefor as if a separate action had been brought. And the plaintiff is entitled to a full indemnity for both or either of the trespasses as his case may be sustained by proof." Moats case was cited and relied on in *Long* v. *Buchanan*, 27 Md. 519. The acts complained of in the present case after the defendant entered, having been done with force, amounted to *a trespass vi et armis*. The general rule as to the joinder of actions is that any two causes of action of the same nature and on which the same judgment may be given can be united in the same suit. *Williams* v. *Bramble*, 2 Md. 318; *Gent* v. *Cole*, 38 Md. 113; *Gladfelter* v. *Walker*, 40 Md. 1; *Barr* v. *White*, 22 Md. 259; *P., W. & B. R. R. Co.* v. *Constable*, 39 Md. 156; *Mediary* v. *McAllister*, 97 Md. 491; *Poe Pleading*, secs. 282–285; *Redemptorists* v. *Wenig*, 79 Md. 348. The plaintiff's fourth prayer upon the measure of damages is free from objection.

The appellant, as defendant below, offered five prayers of which the Court rejected the first two and granted the other three with certain modifications. The first two prayers were demurrers to the evidence, the one asking the Court to rule that "under the pleadings and evidence" there was no legally sufficient evidence to entitle the plaintiff to recover, and the other asking it to rule that "under the pleadings, evidence and admissions" there was no legally sufficient evidence to entitle the plaintiff to recover. Both of these prayers were properly rejected. The plaintiff and her husband, both of whom had lived on her farm for thirty years, and Arthur C. Englar who had lived on it for twenty-one years, all testified that they were familiar with the race and that the defendant and his servants

when they worked on it at the time in the declaration mentioned had materially widened and enlarged it beyond what had been its size prior to that time, and had thrown on the plaintiff's land the material excavated in cleaning and enlarging it. There was of course evidence of an opposite tenor introduced on behalf of the defendant but in view of the testimony to which we have adverted it would have been improper to have granted the defendant's two prayers taking the case from the jury.

We deem it unnecessary to notice at length the other prayers of the defendant which the Court modified before granting them. We have already stated the substance of the plaintiff's prayers, which as modified by the Court, correctly instructed the jury as to the law of the case. We find no error in the changes made by the Court to adapt the defendant's prayers to the same view of the law of the case.

Both of the two exceptions to evidence were taken to the Courts permitting the cross-examination of the defendant and his son, when on the witness stand, as to the different uses to which they put the water that flowed through the race, and as to the manner in which they cleaned the race. The answers elicited by the questions objected to were not of a character tending to injure the defendant, but in any event we think they were admissible for the purpose of reflecting on the character of the alleged trespass.

Finding no reversible error in any of the rulings of the Court below we will affirm the judgment appealed from.

*Judgment affirmed with costs.*